UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Christine Lemke,
*Individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

Autoneum North America, Inc.,

Defendant.

Case No. 3:23-cv-1308

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This matter is before me on Plaintiffs' motion for leave to amend to substitute parties, (Doc. No. 37), and Defendant's motion for leave to file a sur-reply. (Doc. No. 40). For the reasons stated below, I deny both motions.

## II. BACKGROUND

Plaintiff Christine Lemke initiated this action on June 30, 2023, on behalf of herself and similarly situated employees, against Defendant Autoneum North America, Inc., alleging violations of the Fair Labor Standards Act ("FLSA"). (Doc. No. 1). Plaintiffs allege Defendant failed to pay its employees for time spent: (1) undergoing Covid-19 screenings; (2) changing into and out of personal protective equipment; (3) attending meetings, receiving work instructions, or both; (4) walking to assigned work areas; and (5) performing pre-shift work identical to the work performed during scheduled shifts. (*Id.* at 3).

On April 25, 2024, I approved the parties' stipulation and proposed schedule regarding court-facilitated notice to prospective opt-in plaintiffs. (Doc. No. 16). The notice informed prospective plaintiffs that, if they wished to opt-in, they were required to submit a signed consent form "by 45 days after the mailing date of the Notice." (Doc. No. 16-2 at 1). That 45-day deadline has long past, and the parties are well into the discovery phase of litigation.

The discovery process in this case has been fraught with issues and disputes requiring judicial intervention. At the parties' request, I repeatedly extended discovery deadlines. (Doc. Nos. 26, 30, 31). Multiple opt-in plaintiffs failed to timely respond to written discovery requests or appear for scheduled depositions. (Doc. Nos. 31, 32, 34 at 4-8, 35). Plaintiffs were unresponsive to Defendant's request to schedule depositions, (Doc. No. 34 at 13), and several opt-in plaintiffs were ill-prepared to engage in remote depositions or canceled scheduled depositions with very little notice.

On November 5, 2025, Defendant successfully deposed opt-in plaintiff DeMaria Hartfield. (Doc. No. 38-1). Although Hartfield testified that she observed coworkers coming to work early, she acknowledged that she did not know whether those employees were compensated for their pre-shift work. (*Id.* at 7). Hartfield also testified that she was never screened for Covid-19 during her employment at Defendant's factory, (*id.* at 9), that walking to her workstation took no more than two minutes, (*id.* at 8), putting on her protective gear "didn't take me any time," and putting in earplugs took five seconds. (*Id.*) While Hartfield stated that she was required to attend meetings, she admitted that she was paid for those meetings. (*Id.* at 9).

She further acknowledged that, at times, she would start her shift early so that employees scheduled for the prior shift could leave. (*Id.* at 10). But Hartfield testified that Defendant never required her to begin work before her scheduled shift, and she was never disciplined if she chose not to begin work early. (*Id.*). Hartfield also stated that there were occasional discrepancies in her pay,

but when she brought those issues to the attention of human resources, they were corrected. (*Id.* at 8). She further testified that she was always paid time and a half for overtime hours. (*Id.* at 9). And while Hartfield alleged she was improperly charged a replacement fee for a malfunctioning timecard, when asked "[A]re there any other times that you think you should have been paid for that you were not?" she replied "No." (*Id.*).

On January 7, 2026, I held a telephone status conference with counsel. (Doc. No. 36). During that conference, Plaintiffs' counsel relayed that Lemke no longer wished to serve as the representative plaintiff in this matter. Plaintiffs' counsel expressed he was likely to move for voluntarily dismissal of this case in its entirety. Pursuant to that discussion, I ordered Plaintiffs to file any motion for voluntary dismissal no later than January 12, 2026. (*Id.*). Plaintiffs did not file such a motion.

Instead, on January 14, 2026, Plaintiffs filed the instant motion for leave to amend the complaint to substitute Hartfield for Lemke. (Doc. No. 37). Plaintiffs further requested I dismiss Lemke from this action with prejudice. (*Id.* at 3). Defendant filed a response, (Doc. No. 38), Plaintiffs filed a reply, (Doc. No. 39), Defendant sought leave to file a sur-reply, (Doc. No. 40), and Plaintiffs filed a memorandum in opposition to the sur-reply request. (Doc. No. 41).

## III. STANDARD

Rule 15 provides that a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989).

## IV. Discussion

### A. Motion for Leave to File Sur-Reply

Defendant has filed a motion for leave to file a sur-reply, alleging that Plaintiffs' reply brief "sidesteps the dispositive issue" of whether Hartfield is entitled compensation she did not receive. (Doc. No. 40 at 1). "[T]he Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies." *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014). Moreover, "[s]urreplies are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1056 (6th Cir. 2024) (citation and internal quotation marks omitted). That said, a court may grant a motion to file a sur-reply when the nonmoving party presents new legal arguments or new evidence in its reply. *See Mirando v. U.S. Dept. of Treasury*, 766 F.3d 540, 548-49 (6th Cir. 2014).

Defendant has not shown that Plaintiffs' reply brief contains any new arguments or evidence. Therefore, I deny Defendant's motion for leave to file a sur-reply.

### B. Motion for Leave to Amend

Defendant opposes amendment and substitution, arguing that allowing amendment at this stage would significantly delay the resolution of the case and require additional discovery and motion practice. (Doc. No. 38 at 2-7). Defendant further asserts that – based on Hartfield's deposition testimony – she cannot establish a claim under the FLSA. (*Id.*). Defendant represents that should I grant Plaintiffs' motion, it will move for declassification of the purported class. (*Id.* at 2, 7). Consequentially, in Defendant's view, granting leave to amend would be futile and would result in undue delay and prejudice. (*Id.* at 2-4).

Plaintiffs argue granting leave to amend would not cause undue delay because Hartfield has already been deposed. (Doc. No. 37 at 3). Plaintiffs also contend that Defendant will not suffer prejudice because Plaintiffs only seek to amend the caption of the complaint to substitute Hartfield for Lemke, not expand the scope of discovery, alter legal theories, or drastically change the current scheduling orders. (*Id.* at 2-3). Plaintiffs further argue that Hartfield's deposition testimony claiming she began work before her scheduled shift, (Doc. No. 39 at 3), her prior answer to a "request for admission," (*id.* at 4), and payroll stubs and timesheets, establish that she has a viable claim and can serve as the representative plaintiff. (Doc. No. 41 at 12).

**1. Futility**

To succeed on a claim under the FLSA, a plaintiff must ultimately prove by a preponderance of the evidence that she "performed work for which she was not properly compensated." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012). In the context of a FLSA collective action, it is well established that "'[w]ithout a viable claim, [a plaintiff] cannot represent others whom she alleged were similarly situated.'" *White*, 699 F.3d at 878 (quoting *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 519 (4th Cir. 2011)) (first alteration by *White*). Further, "[a] plaintiff cannot bring an action on behalf of another person unless [she] is similarly situated." *Geehring v. Mun. Ct. of Girard*, 357 F. Supp. 79, 82 (N.D. Ohio 1973) (citing cases). "The lead plaintiffs bear the burden of showing that that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (citation omitted), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016).

There are two phases to determining whether employees are similarly situated, which are commonly referred to as the "conditional certification" phase and the "final certification" phase. *See Hogan v. Cleveland Ave. Rest., Inc.*, 690 F. Supp. 3d 759, 772 (S.D. Ohio 2023). During the first phase, plaintiffs must show a "strong likelihood" that they are similarly situated to the employees to be

notified. *Clark v. A&L Homecare & Training Ctr., LLC.*, 68 F.4th 1003, 1011 (6th Cir. 2023) (citation omitted). "To warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has actual knowledge about other employees' job duties, hours worked, and whether they were paid for overtime hours." *Holder v. A&L Home Care and Training Ctr., LLC*, 552 F. Supp. 3d 731, 739 (S.D. Ohio 2021) (citation and internal quotation marks omitted) (vacated and remanded on other grounds).

In the second phase – conducted after discovery has been completed – courts look to determine whether the employees are, in fact, similarly situated, by considering "the factual and employment setting of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien*, 575 F.3d at 584 (citation and internal quotation marks omitted) (alterations by *O'Brien*). Courts may also consider whether the plaintiffs suffer from a single, FLSA-violating policy, and whether the employees' claims are unified by common theories of the defendant's statutory violations. *Id.* at 585. The ultimate inquiry is "'simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected.'" *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 851 (N.D. Ohio 2013) (quoting *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 994 (W.D. Tenn. 2011)) (further citations and quotation marks omitted).

Defendant argues I should deny Plaintiffs' request for leave to amend because, in her deposition, Hartfield stated she was paid for all hours worked and admitted that she has no personal knowledge whether her co-workers were fully compensated for the work they performed. (Doc. No. 38 at 2, 6). Defendant contends that because Hartfield's sworn testimony undermines the uncompensated-work theory she would assert as a substitute plaintiff, she cannot serve as the representative plaintiff, and further maintains that granting the amendment would be "a futile

exercise that will only result in further delays in a case that was filed nearly three years ago, waste judicial resources, and result in additional unnecessary legal costs for both parties." (*Id.* at 2).

In assessing futility under Rule 15, courts generally apply the same standard used to evaluate a motion to dismiss under Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Courts typically do not consider materials outside the pleadings when considering a motion to dismiss. *See, e.g.*, *Hammond v. Baldwin*, 866 F.2d. 172, 175 (6th Cir. 1989). But in certain circumstances, courts may rely "on such outside materials in the context of a futility assessment under a motion to amend." *Chavez v. Waterford Sch. Dist.*, No. 09-12336, 2010 WL 11545172, at *3 (E.D. Mich. Jan. 20, 2010) (considering exhibits attached to pending motion for summary judgement to determine futility of motion for leave to amend). *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein"); *Glomski v. Oakland*, No. 05-cv-70503, 2006 WL 8431919, at *3 (E.D. Mich. Nov. 8, 2006) (considering deposition testimony and other documents where both parties "relied on matters outside the proposed amended complaint itself," discovery had ended, and a motion for summary judgement was under advisement), *report and recommendation adopted by* 2007 WL 1343634 (E.D. Mich. May 7, 2007).

Further, where an allegation in the proposed amendment is contradicted by the movant's own sworn deposition testimony, that contradiction bears upon the question of whether the amendment is futile or if justice requires granting the motion to amend. *See Mayes v. City of Oak Park*, No. 05-CV-74386, 2007 WL 2701953, *1 (E.D. Mich. Sept 12, 2007) (denying motion to amend complaint because the allegations in the proposed complaint were "wholly contrary to what [the plaintiff] testified to *under oath*" during his deposition) (emphasis in original).

Here, Plaintiffs seek to amend the complaint by replacing Lemke with Hartfield. By doing so, Hartfield would represent that she and her co-workers were not paid for all hours worked, including overtime. (Doc. No. 1 at 1). But Hartfield's sworn testimony directly contradicts this allegation:

> Q: Okay. So is it fair to say that you don't know if [Hartfield's co-workers] were compensated for time they were working?
>
> A: I wouldn't know anyone else's – – anyone else's payroll.

(Doc. No. 38-1 at 6).

Further, besides one incident in which Hartfield said she was improperly charged for a malfunctioning timecard, she testified:

> Q: [A]re there any other times that you think you should have been paid for that you were not?
>
> A: No.

(*Id.* at 9).

Plaintiffs attempt to rehabilitate Hartfield's testimony by attaching two paystubs and timesheets to their brief in opposition to Defendant's request to file a sur-reply. (*See* Doc. Nos. 41-1 and 41-2). Plaintiffs assert these documents prove Hartfield was not paid for all hours worked. (*See* Doc. No. 41). But this argument is not persuasive, because Hartfield's own sworn testimony states that whenever payroll discrepancies occurred, human resources ensured she eventually received full payment for all hours worked. (Doc. No. 38-1 at 8).

The ultimate issue in this case is not "whether Hartfield, and the other opt-in Plaintiffs, can show they performed work prior to the start of their shifts." (Doc. No. 41 at 2). Rather, the operative inquiry is whether Defendant had a "policy and practice of not paying Plaintiff and other similarly[ ]situated employees for all time worked and overtime compensation at a rate of one and

one-half times their regular rate of pay for all of the hours they worked over 40 each workweek," in violation of the FLSA. (Doc. No. 1 at 7).

Plaintiffs argue that it would be inappropriate for me to consider the merits of Hartfield's claims at this juncture. (Doc. No. 39 at 4); (Doc. No. 41 at 1). To be clear, I do not treat Plaintiffs' motion as an occasion to adjudicate the merits of Hartfield's potential FLSA claim. Nor do I conclude that any tension between proffered allegations and deposition testimony necessarily requires denial of leave in every case.

But Hartfield's sworn testimony does more than expose a minor factual discrepancy. It removes any doubt about whether she could plausibly maintain the same unpaid-wage theory advanced by the collective or effectively serve as a representative plaintiff. *Cf. Dep't of Labor v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 679 (S.D. Ohio 2025) ("To prevail on an unpaid overtime claim, . . . employees must show that they worked more than 40 hours per workweek and were not paid overtime.") (citations omitted). *See also White*, 699 F.3d at 878 ("[A] lead plaintiff cannot be similarly situated and represent opt-in plaintiffs without a viable claim.").

I conclude granting Plaintiffs' motion for leave to file an amended complaint with Hartfield as the representative of the collective would be futile.

**2. Undue Delay and Prejudice**

Undue delay and prejudice to the opposing party also are sufficient grounds to deny amendment. *See, e.g.*, *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992); *Phelps v. McCellan*, 30 F.3d 658, 662-63 (6th Cir. 1994). "[O]rdinarily, delay alone will not justify the denial of leave to amend the complaint. Delay, however, will become 'undue' at some point, placing an unwarranted burden on the court, or 'prejudicial,' placing an unfair burden on the opposing party." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)) (additional citation and internal quotation marks omitted). "To determine what

constitutes prejudice, the Sixth Circuit considers, among other things, if the amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, and if it would significantly delay the resolution of the dispute. *Christy v. Nationstar Mortg. LLC*, No. 18-cv-13415, 2019 WL 3753717, at * 5 (E.D. Mich. Aug. 8, 2019) (citing *Rogers v. I.R.S.*, 822 F.3d 854, 857 (6th Cir. 2016)).

While Plaintiffs contend that substitution would merely alter the caption of the complaint, that characterization understates the practical consequences of their requested amendment. I conclude that given the content of Hartfield's deposition testimony, granting Plaintiffs' motion for leave to amend will generate further disputes concerning the viability of her claim, her suitability to serve as the representative plaintiff, and whether the collective could continue in its current form. Indeed, Defendant represents it will immediately move for decertification, generating additional motion practice regarding the structure and viability of the collective action. Further, Defendant likely would engage in additional discovery to determine whether Hartfield's status as the representative plaintiff would support new defenses.

This case has been marked by missed deadlines, incomplete discovery responses, deposition issues, and repeated court intervention. Plaintiffs now seek – after substantial discovery has occurred – to replace the original representative plaintiff with an opt-in plaintiff whose sworn testimony will trigger a new round of litigation over whether she can adequately and efficiently assume that role. Doing so would needlessly waste judicial resources in a case that has already consumed considerable party and judicial resources, significantly delay an already protracted litigation process, and lead to increased costs for all parties.

Given the age of this case, rising litigation costs, and the extensive discovery already conducted, permitting substitution under these circumstances would significantly prolong litigation and impose unfair additional burdens on Defendant. *See Duggins v. Steak 'N Shake*, 195 F.3d 828, 834

(6th Cir. 1999) (denying motion to amend where amended complaint would require reopening discovery and force opposing party to assert new defenses); *see also Inge v. Rock Fin. Corp.*, 388 F.3d 930, 938 (6th Cir. 2004) (denying motion to amend, in part, because "significant discovery had been completed" and the deadline for dispositive motions had passed); *Minor v. Northville Pub. Schs.*, 605 F. Supp. 1185, 1202 (E.D. Mich. 1985) (denying motion for leave to amend where "the delay which would result from granting this motion and the additional expense which would be incurred due to further discovery, establishes that defendant would be substantially prejudiced.").

Accordingly, even apart from the futility concerns I discussed above, I conclude that granting leave to amend under these circumstances would cause undue delay and unfair prejudice to Defendant.

**3. Lemke's Motion to Dismiss**

Plaintiffs request that Lemke be dismissed as a party pursuant to Federal Rule of Civil Procedure 21. (Doc. No. 37 at 1). Rule 21 provides that a court may "on just terms" add or drop a party at any time. Fed. R. Civ. P. 21. Plaintiffs state that Lemke no longer wishes to continue serving as the representative plaintiff due to health concerns. (*Id.* at 1-2). While Defendant questions the motives behind Lemke's request, Defendant does not oppose dismissal. (Doc. No. 38 at 2-3). Therefore, I grant Lemke's motion to dismiss her claim.

**4. Dismissal**

I have concluded that Plaintiffs are not entitled to leave to amend the complaint to name Hartford as the original plaintiff because she does not have an FLSA cause of action that is representative of the conditionally certified collective. And I have granted Lemke's motion to dismiss her claims with prejudice. Without a named plaintiff, the case cannot progress. Thus, I dismiss the case without prejudice. *See Bryant v. Domino's Pizza*, No. 22-11319, 2024 WL 1638618, at *1 (E.D. Mich. Apr. 16, 2024).

Further, in circumstances like these, where the original plaintiff cannot "meet her burden [to show] that she is similarly situated to the opt-in plaintiffs[,] . . . decertification [of the collective is] proper." *White*, 699 F.3d at 878. Following decertification, "'the opt-in plaintiffs are dismissed without prejudice.'" *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001)), *aff'd,* 699 F.3d 869 (6th Cir. 2012). Therefore, I dismiss without prejudice the opt-in plaintiffs who have submitted consent forms. (*See* Doc. Nos. 17, 18, 19, 20, 21, 22).

## V. CONCLUSION

For the reasons stated above, I deny Plaintiffs' motion for leave to amend the complaint to substitute DeMaria Hartfield as the representative plaintiff. (Doc. No. 37). Plaintiffs' motion to dismiss Christine Lemke as Plaintiff pursuant to Federal Rule of Civil Procedure 21 is granted. (*Id.*). Because a collective action cannot proceed without a named plaintiff, I dismiss this case without prejudice. Plaintiffs are granted leave to file a motion to reopen this case within 30 days of the date of this Memorandum Opinion and Order. If Plaintiffs do not file the motion by that deadline, this dismissal shall become with prejudice. Further I dismiss without prejudice the opt-in plaintiffs who have submitted consent forms. Lastly, Defendant's motion to file a sur-reply is denied. (Doc. No. 40).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge